```
1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF PUERTO RICO
2

3

    UNITED STATES OF AMERICA,        )
4                                     )
                    Plaintiff,        )   Case No: 12-CR-728 (PG)
5                                     )
    vs.                               )     SENTENCING HEARING
6                                     )
    BETSIAN CARRASQUILLO-PENALOZA,  )
7                                     )
                    Defendant.        )
8

9

10  _____

11                   TRANSCRIPT OF SENTENCING HEARING
                                HELD BEFORE
12            THE HONORABLE JUDGE JUAN M. PEREZ-GIMENEZ
                           Monday, July 7, 2014
13  _____

14

15

16                       A P P E A R A N C E S

17

18  For the United States:

19          Ms. Evelyn Canals-Lozada, AUSA
            Mr. Marshal D. Morgan, AUSA
20

21

22  For the Defendant:

23          Ms. Joannie Plaza-Martinez, AFPD

24

25
```

```
 1                   (PROCEEDINGS COMMENCED AT 1:50 P.M.)

 2

 3                   THE CLERK:  Criminal Case No. 12-728, United

 4       States of America versus Betsian Carrasquillo-Penaloza,

 5       cased called for Sentencing Hearing.

 6                   On behalf of the Government, Assistant U.S.

 7       Attorneys Evelyn Canals-Lozada and Marshal D. Morgan.

 8                   On behalf of the Defendant, Assistant Federal

 9       Public Defender Joannie Plaza-Martinez.

10                   Defendant is present and will be assisted by the

11       court interpreter.

12                   THE COURT:  Are the parties ready?

13                   MS. PLAZA-MARTINEZ:  Yes, Your Honor.  Good

14       afternoon.

15                   MR. MORGAN:  We are ready.

16                   MS. PLAZA-MARTINEZ:  Your Honor, may I address the

17       Court from the Defense table?

18                   THE COURT:  Yes.

19                   MS. PLAZA-MARTINEZ:  Thank you.

20                   Your Honor, I understand that the sentencing had

21       been already started.  And at the previous hearing, I had

22       asked the Court, since the Government was going to present

23       and they did present a video, that they allocute and argue

24       for sentencing before us, and then I was allowed to do it

25       last.  And the Court, I think, said okay.
```

1          THE COURT:  Yes.

2          MS. PLAZA-MARTINEZ:  So, nonetheless, I filed a

3     motion in docket 1273 asking for a hearing challenging the

4     Government's failure to file a motion for a downward

5     departure for substantial cooperation and reports for

6     hearing.

7          Is the Court going to address that motion right

8     now?

9          THE COURT:  I am going to address it, but I want

10    to know why you make such allegations.

11         MS. PLAZA-MARTINEZ:  Your Honor, may this portion

12    of the sentencing hearing be sealed and the public in the

13    courtroom be excluded because of the things that we are

14    going to discuss.

15         MR. MORGAN:  Your Honor, may we just approach?

16         THE COURT:  Yes.

17         MS. PLAZA-MARTINEZ:  Okay.

18         (Whereupon, the following proceedings were held at

19    sidebar:)

20         MS. PLAZA-MARTINEZ:  Thank you.

21         Your Honor, in this case, the Government had filed

22    a previous motion.  Although it was not specifically

23    addressed with the Government's motion when they opposed

24    continuing sentencing hearing and the representations made

25    in the motion, I took them as Government's notice that they

 1    were not going to file a 5K motion.

 2            The Court is aware that the Defendant has signed a

 3    plea and cooperation agreement in this case.  Those things

 4    are not in dispute but some that I will be briefing.

 5            One of them is that the Defendant was debriefed on

 6    two occasions and that she gave others.  She was charged

 7    with and she pled guilty to and she also provided additional

 8    information about other criminal acts.

 9            The Government's motion, when they -- the motion I

10    take as the Government's -- of not filing a 5K motion, they

11    say that although they considered the Defendant gave

12    information, they understand, because the passage of time,

13    that the information was not of use or of little use for the

14    Government, although they didn't say that the Defendant was

15    undeserving of a 5K motion.

16            I filed my motion, and I know that the threshold

17    is very high for me because I have to make a substantial

18    threshold for the Court to -- to put the Government in the

19    position to explain why they have not filed a 5K motion.

20            And in my motion, what I tell the Court,

21    basically, is that I understand that the information that

22    the Defendant provided, it's of a lot of use.  It's not as

23    the Government represented, of little use, even given on the

24    first debriefing, which was several months after she had

25    been arrested, and the second debriefing, which took place

1    in this year, 2014.

2            More specifically, I think that the more

3    substantial information she gave was concerning another

4    participant of this crime who was present and in the parking

5    lot of the hotel where my client was arrested.

6            And although the Government is put in the

7    position -- they have stated the position that they

8    understand that, as far as I know, they are not going to do

9    anything about that information, I understand that my client

10   complied with her part of the bargain, and she gave

11   information.  She was willing to be a witness for the Grand

12   Jury and testify against this individual, who we understand

13   is a participant of the charged crime.

14           The Government's position -- and I believe their

15   explanation under the motion about why they think that

16   information is useless, I think that actually contravenes

17   the language of the case that I cited in my motion, which is

18   the case of U.S. versus --

19           THE COURT:  -- Nelson Rodriquez.

20           MS. PLAZA-MARTINEZ:  And in that case --

21           THE COURT:  That was my case.

22           MS. PLAZA-MARTINEZ:  I understand that.

23           One of the reasons the Court may hold the

24   Government up to its position or to the contract obligation

25   is if the prosecutorial choice is not rationally related to

1    the legitimate Government objective.

2              I understand that though it is not rationally

3    related, that the choice the Government not to do anything

4    with the information that the Defendant provided is not

5    rationally related to any legitimate Government.

6              On the contrary, I think it is the Government's

7    objective to prosecute anyone who is involved in the

8    exploitation of minors.  And if they have a person who is

9    going to be a witness, to bring to justice someone who is

10   participating, I think it is a legitimate Government

11   business.

12             And the fact that my client is willing to assist

13   the Government in that position, I think that it just shows

14   that there is no valid reason for the Government not to do

15   anything with that information and just say that because of

16   the passage of time, they are not willing to do anything

17   about that.

18             That would be our position, Your Honor.

19             THE COURT:  Not only that, but with my

20   recollection of reading the papers that were filed with the

21   Court prior to pleading guilty, your client was seen with

22   that gentleman driving the car.  So the Government knew

23   that.

24             You make a lot of emphasis of the fact that the

25   daughter was willing to cooperate and give names and phone

1    numbers, but that's for the daughter.  Not for the mother.

2         And the case that you cite, Rodriquez, it

3    specifically says substantial assistance is a higher

4    standard for the Defendant to meet than mere cooperation.

5         I assume that what the Government is telling the

6    Court, that there was mere cooperation on the part of your

7    client, who gives a number of the person who go there with

8    her daughter and the other individuals.  They are minors.

9    The Government knew about that.  That she was willing to

10   testify against them, that is cooperation.  But I don't

11   think it goes up to the standard of substantial cooperation

12   in this case.

13        Aside from what you have stated that she told the

14   agents, I don't see that that is substantial at all.

15        There is no issue here that it was true or not

16   true.  The Government is not relying on truthfulness.  It's

17   just that I don't -- I find that there is no

18   unconstitutional reason involved here for not providing her

19   with a substantial assistance motion, but I will hear from

20   Mr. Morgan.

21        MR. MORGAN:  I agree with everything that you are

22   saying.  And, really, just for purposes of the record -- and

23   this is so you can tell your client this also -- you know,

24   we are not taking this case personally.  And we don't -- we

25   are not out to get your client at all.

1           On the contrary, I think that we have shown good

2     faith since the very beginning in wanting to -- wanting her

3     to be able to provide us the information.  I think at the

4     end of the day, however, it just didn't come to fruition.

5           There is no bad faith in us withholding the 5K.

6     It is just that when it comes down to the case, the passage

7     of time does affect the ability for us to use the

8     information.

9           But in addition to that, and without getting into

10    the specifics, there wasn't much that we could do, actually,

11    with the information.

12          It's not a question of us choosing not to use the

13    information.  It is an inability to use the information that

14    she gave to us.

15          I just want that to be clear.

16          MS. PLAZA-MARTINEZ:  Submitted, Your Honor.

17          MR. MORGAN:  The truth is that we would

18    love -- it's very rare that we allow, except in cooperation

19    cases of sex trafficking and transportation -- given her

20    position at the time, we were hoping that it could be more

21    fruitful.  But, I mean, at the end of the day, I am

22    disappointed that we weren't able to get more information.

23          THE COURT:  Even in your own motion, at page 5,

24    you state -- the Government's motion -- that at the time of

25    the first debriefing, they were fairly aware of the

1    co-participant, of her knowledge regarding prostitution of

2    minors but that, due to the passage of time, there was

3    little to nothing that the agents could do to make an arrest

4    or even continue with the investigation.

5         MS. PLAZA-MARTINEZ:  That is the Government's

6    position, and I disagree precisely because they knew who she

7    was, and she was under immigration investigation.

8         I think they had information and available

9    witnesses, and they were available also to arrest that

10   person, who was never arrested, as far as we know.

11        THE COURT:  The Government had their reasons.

12   Maybe it's an undercover agent.  They felt they didn't have

13   enough to charge that other person.

14        But, in any event, throughout the time that I have

15   had this case, and ever since the beginning, I gather from

16   what the Government has stated to the Court and in its

17   motions that, yes, she did cooperate to some extent but that

18   that is not a substantial cooperation as required by section

19   5K1.1.  And, therefore, your motion is denied.

20        I find that there is no bad faith on the part of

21   the Government.

22        As a matter of fact, I think it was the Government

23   who actually reluctantly gave the second debriefing, because

24   at the first debriefing, there was really not that much

25   information that was received that the Government could

1    really use to file a 5K1.1.

2              We had to continue the sentencing.

3              MR. MORGAN:  That is a true statement, now that my

4    memory comes back.

5              THE COURT:  So your motion is denied.

6              MS. PLAZA-MARTINEZ:  Very well.

7              (Back on the record.)

8              MS. PLAZA-MARTINEZ:  Thank you, Your Honor.

9              Therefore, now that the Government has disposed --

10   the Court has disposed of our outstanding motion in

11   docket 72, I will ask then that the Government finish their

12   presentation in argument, and if I may ask to go last for

13   sentencing purposes.

14             Since they already presented the video, I wanted

15   not to bifurcate our proceedings.  And since the Defendant

16   is the one facing punishment, I ask the Court's leniency

17   allowing me to go last before the Government.

18             THE COURT:  At this time I am asking you again,

19   have you read the pre-sentence report?

20             MS. PLAZA-MARTINEZ:  I have, Your Honor.

21             THE COURT:  And have you explained to your client

22   the information contained in the pre-sentence report?

23             MS. PLAZA-MARTINEZ:  I have, Your Honor.

24             THE COURT:  Ms. Carrasquillo, did your attorney

25   explain to you the information contained in the pre-sentence

 1    report?

 2              THE DEFENDANT:  Yes, Your Honor.

 3              THE COURT:  Is there any information in that

 4    report that needs to be corrected?

 5              THE DEFENDANT:  No.

 6              THE COURT:  Any from the Government?

 7              MR. MORGAN:  No.  None, Your Honor.

 8              THE COURT:  Now you want the Government to go

 9    first, and then you will make your allocution later on?

10              MS. PLAZA-MARTINEZ:  Yes, Your Honor.

11              THE COURT:  All right.

12              MS. PLAZA-MARTINEZ:  Thank you.

13              MR. MORGAN:  Your Honor, there isn't much that we

14    really need to add.  The Court saw the videos last time.

15              We recognize in the pre-sentence report that the

16    guidelines came out to something less than the 10 years, and

17    the 10 years is the mandatory minimum in this case.  And we

18    think that that's apropos, all things considered, and we

19    stand by our recommendation in the plea agreement.

20              THE COURT:  Ms. Plaza.

21              MS. PLAZA-MARTINEZ:  Thank you, Your Honor.

22              As part of my argument, I want to adopt the

23    information that I filed with the Court in writing.

24    Specifically, I am talking about docket number 66 and its

25    attachments, and also the addendum of the diagnostic

 1   examination that I filed with the court in docket 71, with

 2   its attachment, which is the addendum, which is attachment 1

 3   of docket 71.

 4          As I stated in my sentencing memo, which is

 5   basically a little history of this Defendant, Betsian

 6   Carrasquillo, I think that to understand someone's behavior,

 7   you cannot look at it in the abstract.

 8          It's important to understand what made my client

 9   become the person she is today, being 35 years old.  And I

10   think both my memorandum and the attachment, including

11   Dr. Margarida's narrow diagnostic evaluation and the

12   addendum that she filed after she had viewed the video that

13   the Court observed at the last hearing in May, it's quite --

14   I would say it's quite sad but kind of logical to see why

15   Bestian was involved in the crime she committed.

16          And going from the pre-sentence report, at the

17   last page, comments made by the probation officer, saying

18   that it is commonly universal -- it's none universally that

19   mothers and fathers protect their kids, that it's expected

20   for them to protect them, and when they are not protecting

21   them, we are enraged.  We cannot understand it or tolerate

22   it.

23          And this is exactly why Betsian is here, because

24   she is an adult now, but she was a victim herself.

25          It's not a surprise that Bestian was abused by her

1    father when she was five years old, abused by her

2    stepfather, and by other adult males when she was still a

3    child.

4              One of them, who assisted my client in becoming a

5    prostitute when she was just a girl, is still walking the

6    Loiza Streets here in Puerto Rico.  He has never been taken

7    to court, has never been charged with anything.  And this

8    man, like many others, took advantage of my client when she

9    was a girl.

10             So although she appears to be a monster here

11   today, she was a victim too.  And where was the system when

12   she needed it most?

13             Luckily, although it's sad to see that she is

14   facing jail time, it's because of this case that I believe

15   the cycle is going to stop.  Because she was a victim, then

16   she became the abuser.  We don't want her daughter, who is

17   here in court, to go through that same cycle.

18             We want Bestian to be the mother she has to be,

19   the mother her daughter deserves to have, but we cannot just

20   condemn her for her acts and fail to understand why does a

21   person like her become the person she is.

22             And it was going through those meetings with

23   Dr. Margarida, somebody who has the training and experience

24   to deal with a person like her.  Bestian comes out very,

25   very strong-minded, comes out tough, hard to talk to.  But

1    it was then in those meetings with Dr. Margarida where she

2    wept and cried, going back to her childhood, thinking of the

3    things that she had to endure, not understanding that she

4    was turning her daughter into herself.

5              As Dr. Margarida recommends in her report, Bestian

6    needs drug addiction and alcohol treatment.  Why?  Because

7    she was a drug user and abuser when she was a child.  That's

8    part of the system she created to cope with the sexual abuse

9    she endured when she was a child.

10             She was offered drugs by her own family members,

11   the people who were supposed to protect her.  She has been

12   an addict for years, an alcohol abuser as well, as the video

13   shows, and she also needs mental health treatment,

14   psychotherapy, because we need to make sure that this family

15   gets better.

16             Giving her jail time is not going to resolve the

17   problem by itself because that daughter is never going to

18   stop being my client's daughter.  She is never going to stop

19   being her mother.

20             And the love they share, even as twisted as it may

21   seem, it is not going to end just because my client

22   committed a crime, she was prosecuted, she plead guilty, she

23   is sentenced, and she goes to jail.  We need to help her and

24   her daughter and all the family members who have been

25   affected and abused and who are part of the cycle.

1          I understand that this is the beginning of -- she

2     is 35 years old, but there is a long way to go, and she can

3     become that mother.

4          I ask the Court to consider her background.  The

5     Court cannot sentence my client for less than 10 years,

6     unfortunately.  It's a mandatory minimum.  Otherwise, I

7     would be asking the Court for less, but please do not

8     consider sentencing her to any higher term of imprisonment.

9          Also, consider as part of the mitigating factors

10    the information that, although it was not sufficient to move

11    the Government to file a motion under section 5K1.2, it is

12    still something that mitigates her punishment.

13         We also want the Court to consider her medical

14    condition.  My client is in a wheelchair today because she

15    has many conditions.  One of them, which has not been able

16    to be detected or determined, is giving her severe pain on

17    one of her sides.  She has been under medication since

18    Thursday.

19         We ask the Court to also recommend to BOP, as part

20    of her term of imprisonment, to give her the medical

21    attention she needs, starting today.

22         We ask the Court -- although she is supposed to

23    follow procedures, ask for medical services, she has been

24    doing that.  She is in pain.  We ask the Court to please

25    urge BOP to give her the medical attention she needs.

1        We also the ask the Court to recommend that she be

2   sentenced -- she be designated to Coleman Institution.  Why?

3   Because we want her to be in Florida, which is the closest

4   to Puerto Rico.  She has a brother up in Pennsylvania, but

5   that's up north and cold.  And because of her medical

6   conditions, I think it's better for her to stay in a warmer

7   place, closer, at least, to her family members, although she

8   will not be able to see them while she is in jail.

9        So, therefore, taking all this information into

10  consideration, we ask the Court to sentence her to the

11  minimum term of imprisonment.

12       Before I end my argument, Your Honor, I know there

13  is nothing I can do about this.  And at the last hearing, I

14  asked that these proceedings were sealed so there was no

15  public or press here in court.  And I did that not to

16  protect my client, because she is always in the news.  This

17  is a big case.  Everybody likes to read about it.  But it's

18  because of her daughter.  And just because you don't name

19  her in the press doesn't mean everybody knows who they are

20  talking about.

21       So whenever something is written about Betsian

22  Carrasquillo, and they say, "The victim is the daughter,"

23  and they put a big picture of my client there, everybody in

24  the neighborhood knows -- everybody in the school knows who

25  this girl's mother is.

1          So, although you don't put the name there,

2     everybody knows she is the minor, and she is being

3     victimized constantly by this information being in the

4     press.

5          We ask that that is also taken into consideration,

6     if the Court can do something about it to protect her, who

7     is a teenager, who needs to live with this, and she also

8     needs to move away from the trauma.

9          That will be all.  Thank you.

10          THE COURT:  Thank you.

11          Anything else from the Government?

12          MR. MORGAN:  No, Your Honor.

13          THE COURT:  All right.

14          On October 11, 2013, Defendant Betsian

15     Carrasquillo-Penaloza pled guilty to Count One of the

16     superseding indictment in Criminal 12-728, charges violating

17     Title 18, United States Code section 2423(a), that is,

18     transportation of a minor with the intent to engage in

19     criminal sexual activity, which is a Class A felony.

20          The Court has used the November 1st 2013 Edition

21     of the United States Sentencing Guideline manual to apply

22     the now advisory guideline calculations.

23          The guideline for 18 U.S.C. 2423(a) offenses is

24     found in guideline 2G1.3.  That section provides that an

25     offense involving the transportation of minor to engage in

1      criminal sexual activity has a base offense level of 28.

2              Since the Defendant was the mother of the minor, a

3      two level increase is warranted pursuant to guideline

4      2G1.3(b)(1)(A).

5              MS. PLAZA-MARTINEZ:  I am sorry to interrupt,

6      Your Honor, but the Court did not address the Defendant.

7              THE COURT:  I am sorry.  You are correct.  Thank

8      you for reminding me.

9              MS. PLAZA-MARTINEZ:  Yes, Your Honor.

10             THE COURT:  Ms. Carrasquillo, is there anything

11     you would like to state to the Court before I pronounce

12     sentence?  You don't have to, but you may do so.

13             THE DEFENDANT:  I would like to apologize to you

14     first, and I ask my daughter to forgive me.

15             I have a lot of faith in God.  I have faith that

16     when I leave here, I am going to be the mother that they are

17     wishing for.

18             MS. PLAZA-MARTINEZ:  That would be all,

19     Your Honor.

20             THE COURT:  Thank you.

21             The guideline for 18 U.S.C. 2423(a) offenses is

22     found in guideline 2G1.3.  That section provides that an

23     offense involving the transportation of a minor to engage in

24     criminal sexual activity has a base offense level of 28.

25             Since the Defendant was the mother of the minor, a

1     two level increase is warranted pursuant to guideline

2     2G1.3(b)(1)(A).

3          Since the offense involved a commercial sex act, a

4     two level increase is warranted pursuant to guideline

5     2G1.3(b)(4).

6          The Defendant has timely accepted responsibility

7     for the offense conduct.  Therefore, a three level reduction

8     is warranted pursuant to guideline sections 3E1.1(a) and

9     (b).

10         There are no other applicable guideline

11    adjustments.

12         Based on a total offense level of 29 and a

13    Criminal History Category of I, the guideline imprisonment

14    range in this particular case, and pursuant to guideline

15    section 5G1.1(b), is 120 months, which is the mandatory

16    minimum sentence provided by the law.

17         There is a fine range of $15,000 to $150,000, plus

18    a supervised release term of not less than five years, up to

19    life.

20         The Court has reviewed the guideline calculations

21    and finds that the pre-sentence investigation report has

22    adequately applied the guideline computations and that it

23    satisfactorily reflects the components of the offense by

24    considering its nature and circumstances.

25         The Court has also considered the other sentencing

1    factors as set forth in 18 U.S.C. 3553(a).

2           Ms. Carrasquillo is a 35-year-old female who has

3    four children.  She has a seventh grade education and has a

4    history of mental health issues.

5           She has been addicted to drugs and excessive

6    alcohol consumption in the past.

7           She had a previous conviction for violating

8    Title 95 of the Puerto Rico Penal Code, which was reduced to

9    a lesser charge.  It's a case for which she was sentenced to

10   a probationary term.

11          She physically attacked Shara M. Pizarro

12   Carrasquillo using a knife, caused an injury on this

13   individual's right leg, and she had to be transported to the

14   hospital.  But the Court and the record should reflect that

15   the Court is not considering that previous case as part of

16   the sentence in this case.

17          The interviews conducted by the agents of the

18   individuals who worked at bar *La Fuente de Todos* helped

19   corroborate that the Defendant had her daughter working in

20   this bar when she was under 14 years old, has informed that

21   the Defendant brought men for her daughter to have sexual

22   encounters in exchange for money, exposing her to be

23   sexually abused, to suffer physical injuries and emotional

24   disturbances.

25          Although the pre-sentence investigation report

1    reports that -- at the bottom of page, the report states

2    that the Defendant chose to look the other way in this

3    matter related to her daughter, but we have the information

4    provided by the psychodiagnostic evaluation performed by

5    Dr. Maria Margarida Julia, who is a neuropsychologist, to

6    the effect that, rather than assuming she looked the other

7    way with respect her daughter, in light of the present

8    charges, the extensive literature regarding victimization

9    indicates that social, emotional, contextual, familiar and

10   psychological limitations resulted in significantly reducing

11   Ms. Carrasquillo's mental and reasoning capacity, distorting

12   her concept of right and wrong, contributing to the

13   condition of the offense.

14          So the Court distances itself from the statements

15   made in the pre-sentence report concerning the fact that she

16   looked the other way.

17          The Court, in imposing sentence, needs to

18   acknowledge the mental health side of the victim.  And,

19   therefore, as part of the recommendations later on, the

20   Court will recommend that she receive mental health

21   services.

22          The parties agreed on a sentence of 120 months of

23   imprisonment, which is the minimum term required by law.

24          The Court finds that the sentence to which the

25   parties agreed, plus the maximum term of supervised release,

1    reflects the seriousness of the offense, promotes respect

2    for the law, protects the public from further crimes by

3    Ms. Carrasquillo, and addresses the issues of deterrence and

4    punishment.

5            Therefore, it is the judgment of this Court that

6    Ms. Betsian Carrasquillo-Penaloza is committed to the

7    custody of the Bureau of Prisons to be imprisoned for a term

8    of 120 months.

9            Upon release from confinement, she shall be placed

10   on supervised release for a term of five years under the

11   following conditions:

12           You shall not commit another Federal, State or

13   local crime and will observe the standard conditions of

14   supervised release recommended by the Sentencing Commission

15   and adopted by this Court.

16           You shall not unlawfully possess controlled

17   substances and refrain from possessing firearms, destructive

18   devices and other dangerous weapons.

19           You shall undergo a sex-offense-specific

20   evaluation and/or participate in a sex offender treatment

21   and/or a mental health treatment program arranged by

22   probation officer.

23           You shall abide by all rules, requirements and

24   conditions of the sex offender treatment program, including

25   submission to testing, such as the polygraph, Able

1    Assessments, visual reaction testing, or any other testing

2    available at the time of your release.

3           You shall waive your right to confidentiality in

4    any records for mental health assessment and treatment and

5    sign any necessary release form required to obtain the

6    records imposed as a consequence of this judgment to allow

7    the probation officer to review your course of treatment and

8    progress with the treatment provider.

9           You will be required to contribute to the cost of

10    services rendered by means of co-payment based on your

11    ability to pay or the availability of third-party payments.

12           You shall be required to submit to an initial

13    polygraph examination and subsequent maintenance testing

14    intervals to be determined by the probation officer to

15    assess in treatment, planning and case monitoring as a means

16    to ensure that you are in compliance with the requirements

17    of your supervision or your treatment program.

18           You shall participate in an approved inpatient or

19    outpatient mental health treatment program.

20           The treatment will be determined by the officer,

21    in consultation with the treatment provider, and they can

22    adjust the modality, duration and intensity of the treatment

23    to the risk and needs presented by the offender.

24           The treatment will permit flexible movement along

25    the continuum of care, that is, outpatient, intensive

1    outpatient, residential and hospitalization, provide for

2    timely intervention in response to offender progress or

3    regression.

4         If medication is ordered by the physician, the

5    offender must comply with the medication regime.

6         You will contribute to the cost of services

7    rendered by means of co-payment based on your ability to pay

8    or the availability of third-party payments.

9         You shall refrain from any unlawful use of a

10   controlled substance and submit to one drug test within

11   15 days of release, thereafter, submit to random drug

12   testing, not less than three samples during the supervision

13   period and not to exceed 104 samples per year in accordance

14   with the Drug Aftercare Program Policy of the United States

15   Probation Office, as approved by this Court.

16        If any such samples detect substance abuse, the

17   Defendant shall participate in an inpatient or an outpatient

18   substance abuse treatment program for evaluation and/or

19   treatment as arranged by the probation officer until duly

20   discharged.

21        You shall provide the probation officer access to

22   any financial information upon request.

23        You shall not engage in a specific occupation,

24   business or profession bearing a reasonable direct

25   relationship to the conduct constituting this offense.

1          Specifically, you shall not work with children

2     under the age of 18 or hold a job that gives you authority

3     over potential victims, gives you access to vulnerable

4     populations or places her near a school or playground.

5          Any employment must be approved in advance by the

6     probation officer, who will make an assessment of the job

7     placement and set employment restrictions based on the Sex

8     Offender Management Procedures manual.

9          You shall consent to third-party disclosures, any

10    employer or potential employer.

11         You shall not reside, be in the company, date or

12    socialize with a child or children below the ages of 18,

13    unless previously approved by the probation officer and

14    after a third-party risk has been duly signed.

15         You shall not enter, loiter or work within

16    100 feet of any area or event frequented by people under the

17    age of 18, including but not limited to schools, daycare

18    centers, playgrounds, arcades, public swimming pools or

19    beaches unless approved in advance by the probation officer.

20         You shall have no personal contact with the victim

21    and/or minors under the age of 18 through mail, letters,

22    telephone communication, audio, visual, computer electronic

23    devices, visit social network sites or third parties unless

24    approved by the probation officer in advance.

25         The only exception to this condition relies in the

1    incidental contact in normal commercial life with minors.

2            You shall participate in a vocational training

3    and/or job placement program.

4            You shall not participate in any volunteer

5    activity or be involved in any youth or children's

6    organization or any group that would bring you into close

7    contact with a child or children under the age of 18, unless

8    prior approval from the probation officer.

9            You may have supervised or chaperoned contact

10   through personal mail, computer, electronic device with the

11   victim, if ordered by the Court.

12           The visit or contact must be previously approved

13   by the treatment provider and the probation officer.

14           You shall maintain a suitable residence approved

15   by the probation officer, which complies with all the

16   conditions of supervision and with the residency and

17   movement, restrictions of the jurisdiction where you may

18   reside, work, go to school or allowed to visit.

19           You shall obtain prior approval from the probation

20   officer prior to changing residences.

21           And you shall stay at your approved residence

22   every night and will not sleep or stay overnight anywhere

23   else without prior approval of the probation officer.

24           You shall not have access to the Internet at your

25   place of residence, unless approved by the probation

1   officer.

2         You shall submit to a search of your person,

3   property, house, residence, vehicles, papers, computers, and

4   other electronic communication or data storage devices or

5   media and effects to a search at any time, with or without a

6   warrant, by the probation officer, and if necessary, with

7   the assistance of any law enforcement officer in the regular

8   discharge of their duties, with reasonable suspicion

9   concerning unlawful conduct of a violation of the condition

10   of probation or supervised release.

11         The probation officer may seize any electronic

12   device, which will be subject to further forensic

13   investigation or analysis.

14         Failure to submit to such a search and seizure may

15   be grounds for revocation.

16         And you shall warn any other resident or occupant

17   that the premises may be subject to searches pursuant to

18   this condition.

19         You shall comply with the requirements of the Sex

20   Offender Registration and Notification Act, being 42 U.S.

21   Code section 16901 *et sec* as directed by the probation

22   officer, the Bureau of Prisons or any State, U.S. territory

23   or Indian Tribe, Sex Offender Registration Agency in which

24   you reside, work, is a student, carry on a vacation or was

25   convicted of a qualifying offense.

1          If you do possess a cellular phone, the same shall

2    be restricted to incoming or outgoing calls and voice

3    messaging system.  No additional features will be allowed

4    without prior approval of the probation officer.

5          You shall cooperate in the collection of a DNA

6    sample as directed by the probation officer pursuant to the

7    revised DNA collection requirements and Title 18,

8    United States Code section 3563(a)(9).

9          You shall not purchase, possess, use or administer

10   any alcohol or frequent any businesses whose primary

11   function is to serve alcoholic beverages.

12         Having considered your financial condition, a fine

13   is not imposed.

14         A special monetary assessment in the amount of

15   $100, however, is imposed as required by law.

16         At paragraph 17 of your plea agreement you read

17   that if this Court were to sentence you pursuant to the

18   recommendations contained in the plea agreement, that you

19   would waive and permanently surrender your right to appeal

20   the judgment and the sentence in this case.

21         The Court has just sentenced you to the

22   recommended sentence included in the plea agreement, which

23   was 120 months.  Therefore, your waiver becomes effective,

24   and I will not advise you of any right to appeal the

25   judgment and sentence in this case since you have waived the

1    same.

2            Any remaining counts of the indictment are hereby

3    dismissed pursuant to the plea agreement.

4            The Court will also recommend to the Bureau of

5    Prisons that at whatever institution is designated to serve

6    her sentence, preferably at Coleman, in the State of

7    Florida, it is recommended that Ms. Carrasquillo receive

8    mental health services, psychotherapy in order to deal with

9    her history of victimization, incest and domestic violence

10   affecting her interpersonal relationships, parental skills

11   and psychiatric condition.

12           The Court also recommends to the Bureau of Prisons

13   that she be allowed to participate in drug and alcohol

14   treatment rehabilitation programs and that, also, she be

15   allowed to participate in educational support to finish her

16   GED, as well as any vocational and/or job placement

17   programs.

18           That is the sentence of the Court.

19           Anything further, Counsel?

20           MS. PLAZA-MARTINEZ:  No, Your Honor.

21           MR. MORGAN:  Nothing from the United States,

22   Your Honor.

23           THE COURT:  Thank you.  You may withdraw.

24

25           (PROCEEDINGS ADJOURNED AT 2:35 P.M.)

```
1    UNITED STATES DISTRICT COURT.)
                                  )  ss.
2    OF PUERTO RICO               )

3

4

5                          REPORTER'S CERTIFICATE

6

7

8              I, JOE REYNOSA, do hereby certify that the above

9    and foregoing, consisting of the preceding 29 pages,

10   constitutes a true and accurate transcript of my

11   stenographic notes and is a full, true and complete

12   transcript of the proceedings to the best of my ability.

13             Dated this 17th day of December 2014.

14

15                              ____S/Joe Reynosa_____
                                Joe Reynosa
16                              Official Court Reporter
                                85 Calle Caribe, Apt 401
17                              San Juan, PR   00907
                                808-255-4840
18

19

20

21

22

23

24

25
```